Yates, J.,
delivered the opinion of the court. The lessor of the plaintiff is one of seven children of Honyere Tewahangarahkan, to whom the lot in question was granted, in the usual manner, for his services as a captain in the line of this state, during the revolutionary war.
The defendant claims under a deed, executed by the patentee to Cornelius Ad. Fan Slyclc, on the 22d December, 1791, who subsequently conveyed to others; and the premises have been held and occupied by sundry persons, who have purchased under this title, for more than sixteen years. The only question presented to the court is, whether this deed is inoperative and void, either by the constitution, or by the act, 11th sess. ■chap.' 85.
In Jackson v. Wood, (7 Johns. Rep. 290,) the court held that a sale and conveyance of a lot of land, made on the 2d of April, 1808, by an Oneida Indian, was void; but it will be seen by reference to that case, that the general reasoning of the judge who delivered the opinion of the court, was founded on the "act of 1801, (1 R. L. K. & R. 464.) xvhich was much more extensive, in its. operation upon contracts xvith Indians, than the act of 1788. It is true, that act is noticed, but the opinion xvas not founded on it, disconnected with the act of 1801, nor did the cáse then before the court require a distinct construction of that act.
The constitution does not affect this deed. The 37th article declares, that no purchase or contract for the sale of lands xvhich may be made with, or of the Indians, within this state. *480 shall be binding on the said Indians, or deemed valid, unless made under the authority and with the consent of (he legislature; and the preamble to this article shows the object contemplated by the framers of the constitution at the time, in ordaining this prohibition or restriction, by stating the importance to- the safe-ty of the state, that peace and amity with the Indians, within the same, be at all times supported and maintained, and that frauds practised towards such Indians, in contracts made for their lands, had produced dangerous discontents and animosities. It is manifest that the provision contained in this article, refers to purchases of lands from Indians, as a1 tribe or community. The constitutional prohibition is, consequently, confined to their native right in the soil. It is a fact too notorious to require proof, that Indian lands, at that period of time, were invariably held in common, and that individual property in land was not known amongst them.
The act of the 18th of March, 1788, (11th sess. ch. 85. does not extend the restriction beyond the provision in the constitution. The preamble recites the 37th article of the constitution, and states the reasons for passing the act to be, in order more effectually to provide against infractions of the constitution, in that respect. This alone is sufficient to show that-the intention of the legislature was to confine the act to that object only.
It is an undoubted fact, that sales by the natives of their' lands have, at no time, been made or consummated by every individual of the community composing the tribe or nation; but that such sales have invariably been conducted by one or " more of their sachems or chiefs. The prohibition of contracts with any Indian or Indians for the sale of lands, therefore, by the act of 1788, was evidently intended to embrace cases of the above description. It never could have'been intended, at that early period, to extend the restriction to lands acquired-under an individual title disconnected with, and independént of, the native right, and derived by express grant from government.
The mischiefs intended to be guarded against, by the article-in the constitution, were the frauds practised on the Indians, in-contracts made for their lands, and the consequent" danger to be apprehended from their discontents and animosities. Not" only the language of the constitution, but the evils apprehended,relate exclusively to lands held by the Indians as communi *481 ties. The discontents and animosities which were intended to be prevented, could only have been those of the Indians, in their political and national capacity; and this was the intimation of the court in the case already referred to.
The first section of the act of 1788 enacts, that if any person shall, thereafter, without the consent of the legislature, in any manner or form, or on any terms whatsoever, purchase any lands, or make contracts for the sale of lands with any Indian or Indians, every person so purchasing, or so making a contract, shall be deemed to have offended against the people of this state, and shall, on conviction, forfeit 100b to the people, and be further punished by fine and imprisonment, in the discretion of the court.
"The second section imposes, the like penalty, for disposing or taking possession of any lands, claiming an interest in them, under colour of any purchase from, or contract made with, any Indian or Indians, at any time since the 14th of October, 1775,. and not made wdth the consent of the legislature.
It is evident that the act of 1788 extends the inhibition to purchases or contracts with the Indians, no further than the constitution itself had done; and that the leading object of the act was to provide suitable penal sanctions to guard against violations of the constitutional prohibition to purchase or contract with the Indians for their lands. The act does not declare that the conveyances or contracts shall be void, because the constitution had already pronounced them to be so; and the penalty imposed for selling or taking possession of any land under any purchase or contract with any such Indian or Indians, at any time since the 14th of October, 1775, shows that the legislature meant only to restrain those acts, because they were infractions of the constitution. If, then, the constitution did not affect a purchase from an individual Indian, of his private interest in land, can it be, that the legislature would, by an ex post facto law, prevent the occupancy or the disposition of land legally acquired ? To construe the act of 1788, as prohibiting, under a penalty, the disposition or occupancy of lands before acquired of an Indian, without any violation of the constitution, or any law then in force, would be to attribute to the legislature an intention of invading private rights, by an ex post facto law; for if the purchase was lawful when made, the party became seised of the land, and it would be part of his right to possess the *482 power of alienating or occupying it. According to the rules of sound construction, therefore, it is manifest, that although the legislature inflict the penalty for purchasing from an Indian or Indians, the singular number is used only to comprehend every possible case of the purchase from them of lands held by them as a tribe or community, and that it never was intended to refer to or include individual rights.
This construction derives great force from the consideration, that the grant to the ancestor of the lessor of the plaintiff was made under the act of the 6th of April, 1790» which, provided, that letters patent for the military bounty lands should issue in the name of the persons who had actually served; and that such lands should be deemed to have vested in the respective grantees, and their heirs and assigns, on the 27th of March, 1783. The patent accordingly grants this lot to Captain Honyere Tewakangarahkan, in allodium. This act was a virtual dispensation by the legislature from any restraint, (if any such existed) created by any antecedent law, of the power of alienation by an Indian grantee. The fact must have been known to the legislature, that there were many Indians who were entitled to bounty lands; yet they authorized a grant to them, their heirs and assigns for ever, without any restraint on the right of alienation. The court are of opinion that nothing short of an express prohibition to the Indian grantee to sell and alienate the land thus granted'to him, his heirs and assigns, under an act of the legislature, can restrain the power and right of alienation, implied from the very nature of the grant; and we do not perceive this inhibition, either in the constitution, or in the act of 1788. There must, therefore, be a judgment of nonsuit, according to the stipulation in the case.
Judgment of nonsuit.